# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| VINCENT SMITH, SR., individually and as the Administrator of the Estate of VINCENT SMITH, JR., deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2:06-CV183 JVB |
| CITY OF GARY, a Municipal Corporation; LEVI RANDOLPH, a Police Officer; and UNKNOWN POLICE OFFICERS, | ) ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DE 23).

**A      BACKGROUND**

On May 15, 2006, the Plaintiff, Vincent Smith, Sr., sued the City of Gary; Levi Randolph, a Gary police officer; and other, unknown police officers. The Plaintiff is the father of Vincent Smith, Jr., who was shot and killed by Officer Randolph on January 15, 2006. The Plaintiff seeks compensatory and punitive damages and other relief pursuant to 42 U.S.C. § 1983, alleging that Randolph, among other things, used deadly force against Vincent Smith, Jr., in violation of his rights under the Fourteenth Amendment to the United States Constitution. Plaintiff alleges that the City of Gary Police Department failed to instruct, supervise, control, and discipline Officer Randolph and that Officer Randolph and other unknown City of Gary officers conspired to deprive Smith of his life without due process of law on the basis of his race, failed

to provide medical treatment, and that they, together with the City, participated in a cover-up. Plaintiff further alleges that Randolph and others conspired to violate his own constitutional rights to redress and to "know the truth about the events leading to his son's death." Finally he alleges a claim against the Defendants under the Indiana Wrongful Death Act.

On June 20, 2007, the Defendants filed their Motion for Summary Judgment. Plaintiff filed his response on September 24, 2007, and Defendants filed their reply on October 9, 2007. The Court heard oral argument on December 20, 2007, during which the parties informed the Court that a criminal case was pending against Defendant Randolph in state court, whereupon the Court stayed these proceedings until the conclusion of the criminal trial. Defendants notified the Court on March 16, 2010, that the criminal trial has concluded. Accordingly, Defendants' summary judgment motion is ripe for decision.

**B.    FACTS**

On January 15, 2006, at about 2:50 pm, Officer Randolph was on duty, in uniform, in his squad car when he received a radio dispatch that there was a burglary in progress at a residence in Gary, Indiana. Officer Randolph arrived at the house a few minutes later. Another officer, Charles Lucas, arrived at the same time Randolph did. Lucas went to the east side of the house and Randolph to the west. Randolph noticed an open window at the west side of the house with blocks stacked under it, which could be used as steps to assist in entering the house through the window. Almost immediately Randolph heard and then saw a figure later identified as Jonathan Pullen standing on some railroad tracks in back of the house to the south. Pullen shouted something that Randolph could not understand. Randolph surmised that Pullen was a lookout

who was trying to warn someone inside the house. His conjecture was later validated by Pullen's statement to FBI agent that he was in fact serving as a lookout. As Randolph walked along the west side of the house, he had his gun drawn, according to Lucas and Pullen. Randolph radioed for backup. A few moments later, a person subsequently identified as Vincent Smith, Jr., emerged from the rear door of the residence. Smith jumped to the ground from the porch onto which the door opened. Randolph identified himself as a police officer and ordered Smith to the ground. Both Officer Lucas and Pullen heard Randolph shout some sort of command.

According to Randolph, Smith turned toward Randolph when he landed after jumping from the porch but ignored Randolph's command to get to the ground. Randolph told Smith to get to the ground a second time. As Smith stood facing Randolph, Smith reached his right hand into the right pocket of his hooded sweatshirt. Fearing that Smith was going for a weapon, Randolph fired twice, missing Smith. Smith then started running to the back of the yard toward the southeast corner. Randolph reholstered his weapon and started after Smith. Smith scaled the fence across the back of the yard.

Neither Pullen nor Lucas saw what happened next. By this time Pullen had disappeared over the railroad tracks and out of sight. Lucas had gotten into his car to give chase after he saw Smith run to the fence and start to climb it. After Smith landed on the other side of the fence, Smith again faced Randolph. Randolph again ordered Smith to the ground. According to Randolph, instead of obeying, Smith again put his hand in his pocket and started backpedaling away from Randolph. Randolph immediately drew his weapon and shot Smith. Smith fell. Randolph ran to him, observed that he was not moving, and called for an ambulance and a

supervisor.

Randolph never saw Smith holding a weapon. Randolph did not search Smith's body for a weapon. He did not search the house for possible victims. Photographs show Smith lying more or less on his right side, with his face turned to the left. His right upper arm and elbow are under his body. His right hand, the palm up, is visible extending out from the left side of his body at waist level. According to the parties, autopsy photographs show that the bullet that killed Smith entered below his left ear and exited to the right of his right eye.

Randolph attended the Northwest Indiana Law Enforcement Academy. His training included instruction on the proper uses of force. Part of that training was a week-long computer simulation class which presented scenarios in which the trainees had to make split-second "shoot" or "don't shoot" decisions. Randolph served four years on active duty in the U. S. Army and twelve years in the National Guard.

**C    SUMMARY JUDGMENT STANDARD**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of

the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, 477 U.S. 242, 249–50* (1986).

**D.     ANALYSIS**

**(1)     *Plaintiff's § 1983 Claim Against Officer Randolph***

To maintain a claim under 42 U. S. C. § 1983, a plaintiff must present evidence that the defendant was acting under color of state law, and that his conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 533 (1981). Defendants have admitted that Defendant Randolph was acting under color of the statutes, customs, and ordinances of the State of Indiana, the City of Gary, and the Gary Police Department. Defendants urge that no Constitutional violation occurred, however, because Officer Randolph's use of deadly force was reasonable.

5

A police officer's use of deadly force is a seizure within the meaning of the Fourth Amendment and accordingly must be reasonable. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). An officer's determination of the appropriate level of force to use must be measured from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The only living witness to the shooting is the Defendant Officer Randolph. The only evidence that would justify the use of deadly force is Officer Randolph's own statement that he feared for his life when he saw Vincent Smith, Jr, put his hand in his pocket as if to draw a weapon.

> In any self-defense case, a defendant knows that the only person likely to contradict him or her is beyond reach. So a court must undertake a fairly critical assessment of the forensic evidence, the officer's original reports or statements and the opinions of experts to decide whether the officer's testimony could reasonably be rejected at a trial.

*Plakas v. Drinski,* 19 F.3d 1143, 1147 (7th Cir. 1994).

Plaintiff's case hangs on the question of whether there is any competent evidence from which a reasonable jury could conclude that Officer Randolph was lying about believing that Smith was reaching into his pocket to draw a gun. Plaintiff asserts that because Randolph did not check the residence after the shooting and did not search Smith for a weapon, it is reasonable to infer that he lied about seeing Smith reach into his pocket, and that he did not truly believe that Smith was armed. Plaintiff characterizes as ridiculous Randolph's testimony that Smith reached for his pocket a second time after Randolph had already fired two shots at him. According to Plaintiff, only a suicidal Smith would have behaved so irrationally, which, Plaintiff asserts, Smith clearly was not, since he was trying to escape. Plaintiff argues further that

6

Randolph's claim that he reholstered his weapon after firing at an individual he believed to be armed does not make sense. Plaintiff's theory is that since Smith never fired back, Randolph reholstered his weapon because he was convinced Smith was not armed. He later shot Smith not in self defense, but to prevent his escape. Plaintiff further maintains that Lake County Medical Examiner's Office photographs[1] show that the bullet fired by Officer Randolph entered behind Smith's left ear and exited near his right eye, proving that the shooting did not occur in the manner described by Officer Randolph and supporting the conclusion that Smith was shot while fleeing, at a time when he posed no threat to Randolph.[2]

Defendants note that Plaintiff has not pointed to any inconsistencies between Randolph's deposition testimony and earlier statements or reports, concluding that there are no such inconsistencies. No experts challenge Randolph's veracity. There is no evidence of any previous use of excessive force by Officer Randolph. As Defendants see it, because another officer was on the scene and Randolph had called for back-up there was no need to shoot Smith to prevent his escape.

Defendants declare that the photos are consistent with Officer Randolph's story.[3]

---

[1]Plaintiff refers to Exhibits E and F to his Brief in Opposition to Defendants' Motion for Summary Judgment as photographs from the Lake County Medical Examiner's Office; neither photographs designated as E and F nor any other photographic evidence was filed with the Plaintiff's brief.

[2]No weapon was found on Smith; that fact, however, does not help the Plaintiff's case. The Court of Appeals for the Seventh Circuit has held that evidence that a shooting victim was found to be unarmed after he was shot and killed by a police officer was irrelevant both in determining whether the officer's conduct was objectively reasonable under the circumstances, and to impeach the officer, where the officer testified that he saw the victim reach quickly for his pocket, but did not claim to have seen a weapon. *Sherrod v. Berry*, 856 F.2d 802, 804–06 (7th Cir. 1988).

[3]Defendants submitted autopsy photographs which they claim show the entry and exit wounds. Specifically, according to Defendants, Exhibit I to Defendants' brief demonstrates the angle of the bullet's path through Smith's skull; Exhibit J shows the entry wound below his left ear; Exhibit K shows the exit would to the right of Smith's right eye.

Defendants explain that, although at one point in his deposition Officer Randolph said Smith was facing the officer when he fired the fatal shot, at another point Randolph said that he was not focusing on the direction of Smith's face but rather on what Smith was doing with his hands. While Defendants allow that at the very moment that the bullet struck him, Smith's face was not completely directed at Randolph, they argue that if Smith merely flinched between the time Randolph reached for his weapon and fired it he would have exposed the left side of his neck. They point out that Randolph testified that he did not recall whether, when he fired the shot, Randolph's head was facing him or in some other direction. Randolph said that at the time he fired he "just saw a silhouette." (Randolph Dep. at 85.)

In response to Plaintiff's claim that Smith's behavior as described by Randolph—reaching into his pocket again after he had already been shot at twice—was so irrational that his account should be disbelieved, Defendants suggest that Smith's actions in burglarizing a relative's home, ignoring an armed police officer's repeated orders to drop to the ground, and running after having been caught red-handed, are every bit as irrational as moving his hand toward his pocket after having been shot at. They offer Smith's need to pull up his low riding, saggy pants after jumping off the porch and jumping from the fence as a possible explanation for reaching into his pocket. Defendants explain Randolph's failure to check inside the house after the shooting by noting Randolph's testimony that other police officers arrived on the scene shortly after the shooting to investigate. They contend that turning over the motionless Smith to search him for a weapon would amount to tampering with the scene and would violate proper police practices. With regard to Randolph's reholstering his weapon as evidence that he did not believe Smith was armed, Randolph's explanation was that he did so in order to give

8

chase. Defendants argue that there was no need to pull the weapon as long as Smith's hands were in full view.

Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgement is not appropriate. *See* Notes of the Advisory Committee to Rule 56 (e), 1963 Amendment. Even so, a non-movant must raise significant issues regarding the movant's witnesses' credibility in order to defeat summary judgment on this ground. *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994). It is not enough to simply allege that the movant's witness is lying. *Id.*

With regard to Officer Randolph's failure to search the body or the residence following the shooting and his reholstering of his weapon to chase Smith, Plaintiff has pointed to no evidence that these omissions deviated from standard police practice under the circumstances. These actions may mean nothing more than that Randolph was doing his job the way he had been trained to do it. If that is the case, it is not reasonable to infer that Randolph did not truly believe Smith was armed. Proper police procedure under the circumstances is not a matter of common knowledge. Expert testimony might have borne out Plaintiff's claims, but Plaintiff offered none. Because the Court is unable to measure Randolph's behavior against standard police practice, the Court cannot conclude that the behavior Plaintiff cites raises a significant issue as to Randolph's credibility.

As for the claim that the photographs showing the trajectory of the bullet through Smith's skull indicate that Smith was fleeing, the Court is unable to determine what, if anything, the photographs demonstrate about Smith's position in the instant before Officer Randolph drew his weapon and fired. To be sure, as the Defendants admit, the photographs show that Smith did not

have his face directed squarely at Randolph when the bullet hit him, but Randolph did not make that claim. Randolph stated he was focused on where Smith's hands were, not his face. The photographs, standing alone, fail to raise significant issues at to the truthfulness of Randolph's testimony that Smith was reaching into his pocket and that his upper body, at least, was facing toward Randolph when Randolph fired.

Finally, the Court agrees with the Defendants that Randolph's description of Smith's behavior is not so inherently implausible that it calls Randolph's veracity into question.

The Plaintiff has failed to raise any significant issues as to Defendant Randolph's credibility or to designate any other evidence tending to prove that Randolph did not act in an objectively reasonable manner under the circumstances when he made the split-second determination that Smith was reaching for a weapon and shot him. The Court therefore grants Defendants' motion for summary judgment on Count I of Plaintiff's Complaint.

**(2)** *Plaintiff's 42 U. S. C. § 1983 Claim Against the City of Gary*

Count II of Plaintiff's complaint alleges that the City of Gary is liable under 42 U. S. C. § 1983 for failing to "instruct, supervise, control and discipline" Officer Randolph "to refrain from using unjustifiable deadly force." Plaintiff's response brief does not address Defendants' arguments directed against Plaintiff's claim against the City of Gary. However, at oral argument Plaintiff maintained that his claim against the City survives because Officer Randolph's conduct makes it clear that his training was inadequate. However, because the Court has determined that there is no evidence from which a reasonable jury could find that Randolph's conduct was

unreasonable under the circumstances of this case, Plaintiff's claim against the City must fall also.

**(3)** *Plaintiff's Civil Conspiracy Claims*

Count III of Plaintiff's complaint alleges that Defendant Randolph conspired with unknown police officers to deprive Smith of his life without due process. Count IV alleges a "cover-up" conspiracy among Randolph and unknown officers. Defendants assert that the record is devoid of evidence of any agreement with anyone to commit an unlawful act. Plaintiff's response is, once again, silence.

Because Plaintiff has wholly failed to respond to Defendants' arguments for summary judgement on the conspiracy counts, these claims are deemed abandoned. *See Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) and *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F3d 560, 562-63, n.2 (7th Cir. 1996). Moreover, Plaintiff informed the Court at oral argument that he was not pursuing these claims. Therefore, the Court grants summary judgment for all named Defendants on Counts III and IV of Plaintiff's Complaint. With regard to the unknown defendants, claims against unknown persons are meaningless and uncompensable. *Copeland v. Northwestern Memorial Hosp.,* 964 F.Supp 1225, 1234 (N.D. Ill. 1997). Accordingly, the Court now dismisses the "Unknown Police Officers."

**(4)** *Plaintiff's Indiana Wrongful Death Claim*

Pursuant to 28 U.S.C. § 1367(a), in any civil action where a district court has original jurisdiction, it has supplemental jurisdiction over related state claims. However, under §

11

1367(c)(3), the court may decline to exercise supplemental jurisdiction over such a claim if it has dismissed all claims over which it has original jurisdiction. As a general rule, when all federal claims are dismissed before trial, a district court should relinquish jurisdiction over pendent state law claims rather than resolving them on the merits. *See Williams v. Rodriguez*, 509 F.3d 392, 404 (7 th Cir. 2007). Because the Court has granted summary judgment on all Plaintiff's federal claims, it dismisses Plaintiff's state wrongful death claim without prejudice.

E.  **CONCLUSION**

Defendants' Motion for Summary Judgment (DE 23) is GRANTED as to all Plaintiff's federal claims. Plaintiff's state wrongful death claim is DISMISSED without prejudice.

SO ORDERED on September 21, 2010.

  s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge